UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRISTEN ZALESKI,

    Plaintiff,    Case No.

v.    Hon.

DENIS MCDONOUGH,
SECRETARY OF VETERANS
AFFAIRS, U.S. DEPARMTENT OF
VETERANS AFFAIRS

    Defendant.

---

Samuel L. Estenson (P82414)
NACHTLAW, P.C.
*Attorney for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
sestenson@nachtlaw.com

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Cristen Zaleski ("Plaintiff"), by and through her attorneys, NACHT LAW P.C., and brings this action against Denis McDonough, Secretary of Veterans Affairs for the United States Department of Veterans Affairs ("Defendant" or "VA").  In support thereof, Plaintiff hereby states and alleges the following:

### PARTIES AND JURISDICITION

1.    Plaintiff was, at all times relevant to this cause of action, employed by

1

Defendant within the Eastern District of Michigan.

2. Plaintiff is a resident of Livingston County, in the State of Michigan.

3. Defendant Dennis McDonough is the Secretary of the United States Department of Veterans Affairs, a federal government agency.

4. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the parties and the subject matter of this action, because the action arises under the laws of the United States, specifically Section 501 of the Rehabilitation Act of 1973.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, because Plaintiff resides in the Eastern District, and because the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

6. Plaintiff has exhausted all administrative remedies and received a Final Agency Decision on September 28, 2021.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed with the VA at the VA's hospital located in Ann Arbor, Michigan from February 20, 2018, through September 14, 2020.

8. She was initially employed as a Supply Technician.

9. On September 10, 2018, she was appointed a Purchasing Agent, GS-5, with a two year probationary period.

10. Plaintiff is a veteran with service-connected disabilities, and is disabled as defined under the ADA (the standard imposed on Section 501 claims) with multiple disabilities that substantially limit one or more major life activities.

11. Plaintiff's health conditions were well known to Defendant at all times relevant to this action.

12. She was appointed via the VA's Schedule A hiring authority, reflecting her disabled status.

13. From the beginning of her employment as a Purchasing Agent, Plaintiff would occasionally discuss her conditions with her colleagues and supervisors, including her first line supervisor Lori Kraft.

14. Starting around July 2019, Plaintiff's health declined, and her disabilities became more pronounced.

15. Kraft began to penalize Plaintiff for health-related absences, despite Plaintiff continuously asking Kraft for help in relation to her disabilities and her need for accommodation.

16. These conversations put Defendant on notice of both Plaintiff's disability and her ability to perform the essential functions of her position with reasonable accommodations.

17. Kraft did not report Plaintiff's requests for assistance to her superiors or to Human Resources.

18. Instead, in October 2019, Plaintiff was designated "AWOL" despite consistently providing medical documentation excusing her absences.

19. Kraft then accused Plaintiff of misusing her sick leave and punitively placed her on a sick leave certification plan.

20. Plaintiff obtained intermittent FMLA leave in November 2019 in an effort to prevent Kraft from holding the effects of her disability against her.

21. Plaintiff also informally reported to the VA's HR department that she believed Kraft was subjecting her to discrimination and retaliation on the basis of disability.

22. Upon information and belief, no action was taken by Defendant.

23. Despite her diagnoses, Plaintiff performed admirably in her position; she was at all times capable of performing the essential functions of her job.

24. Plaintiff always received "fully successful or better" performance reviews (through October 2019).

25. But by late 2019, Kraft began to demonstrate hostility towards Plaintiff as a result of her now more pronounced disabilities.

26. Kraft interrogated Plaintiff about her disabilities and why her conditions "made her so sick."

27. On multiple occasions, Kraft called Plaintiff a "fucking hot mess," referring to her disabilities.

28. Kraft also told Plaintiff that she needed to "toughen up."

29. As time went on, Kraft's hostility towards Plaintiff intensified, and she began to single Plaintiff out for disparate treatment and subject her to unmerited discipline.

30. Kraft held Plaintiff to different standards than comparable non-disabled peer employees regarding punctuality and performance.

31. Kraft would also ignore Plaintiff's scheduling requests and requests to enroll in job training, while approving other non-disabled peers' requests.

32. Kraft also asked Plaintiff invasive questions about her disabilities and asked other Logistics employees about Plaintiff's health and what was "wrong" with Plaintiff.

33. In or around July 2020, Plaintiff was informed by her physician she required medical procedures that would necessitate additional leave and Plaintiff was concerned about having a sustained period of unpaid leave.

34. Plaintiff asked Kraft for forms and assistance necessary to seek donated leave and Disabled Veteran Leave.

35. Kraft ignored Plaintiff's requests and impeded her ability to obtain these forms of leave.

36. Around this time, Kraft also distributed COVID bonuses to Logistics employees, but excluded Plaintiff and, upon information and belief, other disabled employees.

37. In late August 2020, Plaintiff informed Kraft and her second line supervisor, Mark Dotson, that she required surgery on September 30, 2020, and would need to take a four-week period of leave to recover.

38. In addition, Plaintiff informed Kraft and Dotson that upon her return to work, she would be permanently restricted to lift no more than 25lbs.

39. This constituted a request for reasonable accommodation.

40. Plaintiff provided documentation from her physician supporting this request.

41. In response, Kraft expressly stated that if Plaintiff returned to work with any restriction, she would lose her job.

42. Kraft did not report Plaintiff's request for reasonable accommodation to HR or initiate the VA's process for when an employee requests a reasonable accommodation.

43. In an effort to placate Kraft and keep her job, Plaintiff asked her doctor's office to change the restriction to restrict her to lift no more than 30lbs.

44. Then, on or around September 9, 2020, Dotson called Plaintiff's physician's office and began to interrogate nurse practitioner Stephanie Brodie about Plaintiff's protected health information.

45. Ms. Brodie refused to provide such information.

46. Dismayed and fearful Kraft would follow through on her threat of termination, Plaintiff contacted EEO Program Manager Diana Cass on September 11, 2020, to make a formal disability discrimination complaint.

47. Almost immediately, on September 14, 2020, Kraft and Dotson terminated Plaintiff, two days before the alleged end of her probationary period.

48. In so doing, Defendant retaliated against Plaintiff on the basis of her disability, and for seeking accommodations.

49. Kraft and Dotson's ongoing behavior, including, but not limited to, Kraft's constant derogatory comments and disparate treatment of Plaintiff, Kraft telling Plaintiff she'd be fired if she had a lifting restrictions, and Dotson calling Plaintiff's doctor, constituted harassment and created a hostile work environment for Plaintiff on the basis of her disability.

## COUNT I
## FAILURE TO ACCOMADATE

50. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

7

51. Plaintiff was a qualified individual with a disability under the Rehabilitation Act and the Americans with Disabilities Act of 1990 ("ADA").

52. Plaintiff was substantially limited in major life activities, including, but not limited to, thinking, concentrating, sleeping, and working.

53. Despite her disability, Plaintiff was at all relevant times qualified to perform the essential functions of her job with or without reasonable accommodation.

54. Defendant was aware of Plaintiff's disability.

55. Plaintiff's request not to lift over 25lbs was a request for reasonable accommodation.

56. Under the Rehabilitation Act, Defendant owed Plaintiff a duty to engage in a meaningful interactive process to determine whether or not she was in need of a reasonable accommodation and to identify the precise limitations resulting from the disability and potential reasonable accommodations.

57. Defendant, without cause or a showing of undue hardship, failed to accommodate Plaintiff's disability by failing to engage in the interactive process.

58. Defendant's actions in violation of the law were willful.

59. As a direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation

and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

60. As a further direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## DISABILITY DISCRIMINATION

61. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

62. Plaintiff was a qualified individual with a disability under the Rehabilitation Act and the ADA.

63. Plaintiff was substantially limited in major life activities, including, but not limited to, thinking, concentrating, sleeping, and working.

64. Despite her disability, Plaintiff was at all relevant times qualified to perform the essential functions of her job with or without reasonable accommodation.

65. Defendant was aware of Plaintiff's disability.

66. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

67. Defendant discriminated against Plaintiff on account of her real and perceived disability in violation of the Rehabilitation Act, including, but not limited to, by falsely disciplining Plaintiff, creating a hostile work environment, and/or terminating Plaintiff.

68. Defendant's actions in violation of the law were willful.

69. As a direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

70. As a further direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

### COUNT III
### RETALIATION

71. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

72. Plaintiff engaged in protected activity, in good faith, including, but not limited to, by requesting accommodations for her disability and by contacting the VA's EEO Program Manager, Diana Cass, on September 11, 2020, to initiate a complaint.

73. These exercises of protected rights were known to Defendant.

74. In retaliation for her protected activity, Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to retaliatory harassment, termination, and other acts described herein.

75. Defendants' reasons for taking these actions were retaliatory and not legally justified.

76. As a direct and proximate result of Defendant's violation of the Rehabilitation Act, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

77. As a further direct and proximate result of Defendant's violation of the Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity

11

and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## Hostile Work Environment

78. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

79. Plaintiff was a member of a protected class, as a qualified individual with a disability under the Rehabilitation Act and the ADA.

80. Defendant was aware of Plaintiff's disability.

81. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

82. Defendant subjected Plaintiff to severe and pervasive disability-based harassment, thereby creating an objectively hostile work environment.

83. The harassment unreasonably interfered with Plaintiff's work performance by creating an environment that was intimidating, hostile and offensive.

84. Defendant's managerial and supervisory employees were aware of, and indeed the primary participants in, the objectively hostile disability-based harassment, and failed to take remedial action.

85. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

86. Plaintiff was subjected to adverse employment actions, up to and including termination.

87. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her disability.

88. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights.

89. As a direct and proximate result of Defendant's violation of the Rehabilitation Act, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

90. As a further direct and proximate result of Defendant's violation of the Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief in the form of (a) a judgment against Defendant in the amount of any applicable unpaid back pay, front pay, liquidated damages, punitive damages, prejudgment interest, costs, and attorney fees as warranted under the law; (b) an award of appropriate equitable relief, compensatory damages, and exemplary damages as warranted under the law; (c) an award of appropriate civil penalties; and (d) all further relief as the Court deems just and equitable.

        Respectfully submitted
        NACHTLAW, P.C.

        */s/ Samuel L. Estenson*
        Samuel L. Estenson (P82414)
        Attorney for Plaintiff

Dated: December 24, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRISTEN ZALESKI,

      Plaintiff,                                       Case No.

v.                                                      Hon.

DENIS MCDONOUGH,
SECRETARY OF VETERANS
AFFAIRS, U.S. DEPARMTENT OF
VETERANS AFFAIRS

      Defendant.

---

Samuel L. Estenson (P82414)
NACHTLAW, P.C.
*Attorney for Plaintiff*
101 North Main St., Suite 555
Ann Arbor, MI 48104
(734) 663-7550
sestenson@nachtlaw.com

---

## **JURY DEMAND**

NOW COMES Plaintiff Cristen Zaleski by and through her attorneys, NACHT LAW P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

                                                   Respectfully submitted
                                                 NACHTLAW, P.C.

                                                 */s/ Samuel L. Estenson*
                                                 Samuel L. Estenson (P82414)
                                                 Attorney for Plaintiff

Dated: December 24, 2021